This is Kenneth Carey and Steve. Let's see if I pronounce this Anyadike versus Jonathan Kirk and Billion Dollar Baby Entertainment. And Jonathan May is here for the appellants. Kevin Marlowe is here for Universal and Interscope by Zoom. And Zachary Keller here is here for Jonathan Kirk and Billion Dollar Baby. And so, Mr. May, you may begin your argument. May it please this honorable court, Proverbs 31.8 in the Bible states, ensure justice for those being crushed. There was no justice for plaintiffs Kenneth and Steve because the lower court arbitrarily and capriciously protected defendants, Universal Music Group, Interscope records, Jonathan Kirk and BDBE, which is Billion Dollar Baby Entertainment. And he protected their criminal pattern of behavior to profit together. The judge ignored critical evidence like the public prospectus from UMG, which is Universal Music Group, which was docket 206 attachment one and was published in 2021, which is a legal document for the right to have securities that's submitted to the SEC. And he ignored critical evidence like the code of conduct. The code of conduct is from Universal Music Group and oversees their entire company. He ignored and did not look to past and present future violent video evidence that should have been admitted or viewed via federal rules of evidence 404B2. Can you, can you walk me through, in your view, exactly what happened to lead to the violations that you claim? Okay. Um, so an overview of the entire story, correct? Essentially, the rapper, the baby, Jonathan Kirk is a gangster rap artist. He signed with Interscope, Interscope and essentially he had a pattern of attacks. And there's been 16 attacks to where he would have an attack where he hit a woman, he hit an old man and knocked his tooth out. He attacked my clients with either just him or with other people. There was, uh, uh, Why are those other attacks relevant to the alleged attack on your client? So this is all motive and scheme because every time there was an attack, it was in the news and it was broadcast worldwide. So what was the attack on your client specifically? I'm sorry, what? What, what was the nature of the attack on your client? So they had a business deal where my clients were paying for him to show up to a nightclub to just to appear. And when they met with him, uh, there were miscommunication, things happened. And essentially him and his, uh, co-conspirators, there were four or five of them attacked, uh, Steve, he got what he claims alleges is that he was punched in the face and he ran away. And then Kenneth was jumped to where all the men were kicking and punching him to the ground. They, uh, the baby, the baby, my client claims that the baby came over, poured apple juice on him, embarrassed him, said that it looks like you peed on yourself. They dragged him across the street. This is all in the middle of the night. Um, they let him up, they, they took everything out of his pockets, his cell phone, you know, he never got his cell phone back. Um, what were the claim damages for the cell phone? We asked for a hundred thousand dollars, right? Walk me, walk me through that please. So this, any cell phone or any computer, you have the value of the actual, just the software, the hardware, which is whatever it was at the time, maybe $700. And then you have the value of all the, uh, the contents that are within it. So with Mr. Kerry, he's, he does events for artists and he had artist numbers, artist contacts, many contacts that he was unable to retain documents, contracts. Did he not back up his phone? Um, because so he purposely maintained an older phone than maybe the current time that was like an iPhone 12 and he had like a seven. And so it wasn't backed up at that time. No. And so to continue with what happened that day, um, they left, uh, and it carried there. He got up and then they, they got in a car, they went to speed off, they stopped, they got out, knocked him unconscious, essentially on the ground. They left, he got up. And when we look back at the facts of the case, there's a camera angle from the hotel down on the attacks that, uh, we believe was planned by all the parties that went immediately to TMZ exposing Kenneth Kerry to, you know, worldwide news of being attacked, being dragged, being, you know, looking like he peed on himself cause there's liquid all over the ground. And then in addition to that, the attackers all had hoods with them like head coverings and they put on head coverings before attacking them. And so, um, and then in addition to all that as well, there's a contract between the baby and my clients and the agreement between the baby and universal music group and Interscope is that they have to include contractually, they have to include, um, themselves in every contract that the baby does because they're supposed to be paid a percentage. In this contract, they didn't include universal music group and Interscope, which they had to do. And we, we state the obvious reasons that they don't want to be included. They're trying to conceal this conspiracy, this involvement in it. And they're profiting handsomely, handsomely because every time the baby does these attacks, it's on the news, the news, he gets followers on Instagram, on YouTube, on Spotify, even to the point where he was the largest, uh, he had the largest song of the summer, um, after that event. And he was number one. You think, you think he had the largest song? You think that's a direct result of the events that you cite? Yes, Your Honor. And why, how do you get from A to B there? Because all the notoriety that was created by the scheme and the attacks that he was doing. And so I cited the foremost expert on gangster rap. I think one of the problems that happened with the district court is, to me, understanding gangster rap and the industry, I understand it because I'm a, I listened to it. I know about it. To me, it's obvious, but to other people, to older gentlemen, to the elderly crowd, it may not have, it may not be obvious at all. So I pulled out an expert. He has specific statements that show why the motivation and the plan between UMG, Interscope, and what he said, these are just a couple of highlights. Violence boosts gangster rap sales. His expert opinion, the foremost expert in U.S. v. Williams, 2022. Uh, it's common to set up a rap rival. So the Baby and Cam Colhart had a, what I believe was a staged, um, a stage attack that fit the same pattern of attack that happened to Kenneth Carey and Steve Enedike. And was there pancing in each of these attacks or were there different things in each of these attacks? It was very similar. There were similar actions in that, um, in the attack on Cam Colhart, which happened prior and it was staged. Um, and the attack that happened then, uh, Cam Colhart was attacked. He was knocked unconscious and he was shown defecating himself. And as a result of that, the Baby, his Instagram followers went from like 800,000 to 5 million. And he increased in popularity, increased in followership. And what happened is Cam Colhart came out with videos and said, Hey, this wasn't real. I really didn't get beat up. This was all a hoax. Well, Cam Colhart has, had died during the pendency of this trial. So we couldn't bring him in, but he has these videos and he explains and he proves it in his videos. He says, Hey, look at the video. It's videos that aren't just from the Baby's cell phone. It's my cell phone view and his cell phone view. And we put them together to create this video. And so the Baby based on that increase and he even made shirts that we tried to show to the, the court and the jury and we weren't allowed to, he made shirts showing himself as like a victor in a fight. So I know that I'm the one who's asked you to go through the facts, but since you're running out of time, I'm going to ask you about some of your specific errors that you've cited here. So I think the first one is that you say the district court abused its discretion with several discovery orders. The first one was the magistrate judge's denial, striking of a motion to compel better responses to interrogatories. Am I understanding that correctly? Correct Your Honor. And if I could just finish my last statement is that when the attack happened on Kenneth and Steve is the same thing, knocked unconscious, defecating on themselves with the apple juice. Now to your question here. So we had sought depositions from universal music group. We had sought requests for production. The only thing that we got from both parties was the four agreements between the parties and we were seeking all parties. But are you trying to appeal the magistrate judge's order? Because we don't have, we don't have jurisdiction to consider an appeal from a magistrate judge's order. We're seeking DeNovo to review the entire, the entire case and all the errors that were made Your Honor. But I mean, procedurally DeNovo review does not apply to all of the claims that you've raised. Okay. I mean, that was our goal. That was our intention was to seek to get this motion to compel to force them to do the discovery period that the judge should have extended the deadline. But didn't you take your first deposition two days before the end of the discovery period? Yes, Your Honor. Why isn't that on you rather than on the court? So part of the issue was setting up a deposition of not them not being available. So when I would try to set hearings, try to set depositions, they wouldn't, they have maybe seven attorneys on their side and coordinating between me being an eighth, the seven attorneys and me, it became extremely difficult. That's what led to the delay and the motion to compel getting a hearing for it is just a consistent delay. And then to the point where the deadline passes and then they say, well, we're not going to, the court said they're not going to enforce a motion to compel or they're not going to enforce to answer to a request for production. They're not going to enforce the deposition. And on the deposition with UMG, if I may, I need to get whatever I talked. On the definition. Well, the court doesn't abuse its discretion if it, um, um, enforces its own discovery deadlines and rules and its local rules. So with the deposition of UMG, we had it scheduled a day before the deadline and essentially they responded to us and they said, well, you need to narrow the scope of the discovery. So I had responded via email. The scope is all the, all the allegations of conspiracy and, um, dealings with the baby, uh, that are in our, that are in our complaint. And he said, well, we're not going to show up. So we had scheduled a deposition with, with one of their officers and essentially I had said, please name an officer that we can, that we can submit to deposition. And they said, we're not going to show up because the scope wasn't narrow enough of what you're going to ask them about. But essentially if I had narrowed the scope less, say I had narrowed it to communications with the baby, I wouldn't have been able to ask about their marketing plans, their marketing schemes, how they generate money, where the money goes, things of that nature. So that was one of the major issues is in deposition. I wanted to ask about the company's, um, procedure, what they do, their communications. And I needed somebody that had knowledge of those things. And essentially they just denied it and they denied, you know, providing requests for production, which were way in advance. They denied, uh, the deposition and they also denied a deposition of Lucian Grange, their CEO. And they did it in accordance with the apex doctrine. The apex doctrine says that you can't, uh, you can't depose a senior level executive unless they have specific knowledge. Well here, um, the baby had violated UMG Interscope's Code of Conduct many times and they didn't, they didn't cancel his agreement. And they had a specific, uh, policy to cancel whether it's an agent, somebody they work with, an independent contractor, whether it's an employee. They need to end those agreements if that person violates it. The court refused to, um, consider and acknowledge the Code of Conduct. And UMG Interscope, it's important that only the, the CEO of UMG would override the Code of Conduct and say, okay, we're gonna, we're gonna deny that. We're gonna ignore that. He should have specific knowledge because he would have known. The baby was listed as one of their top assets on their perspectives out of thousands of artists with the likes of Elton John. And he would have had knowledge based on news with the baby. Um, your honors, I'm out of time. All right. Thank you. Thank you. Mr. May, we'll hear from Mr. Marko on behalf of Universal and Interscope. May it please the court, Kevin Marko from Becker on behalf of the Appellees, Universal Music Group, Inc. and Interscope Records, which is an unincorporated division of Universal Music Recording, uh, which is not a party to this case. Uh, your honors, the Universal Music Appellees have no place in this lawsuit. I think the court recognizes as the district court below did. This is a routine assault and battery in a breach of contract case. Uh, the appellants have pursued, uh, really frivolous claims, alleging a heinous conspiracy by my clients and the recording artist, Mr. Kirk, to commit violence, to hurt people for, uh, arbitrarily for money. The theories are outrageous. They're also devoid of any facts, of any legal support. Uh, but for my instant purposes here and on this argument, uh, those frivolous claims are mere context because the court never reached the merits as to the Universal Music Group parties. It basically granted a motion to dismiss on jurisdictional grounds, uh, for failure to serve process of Interscope Records, which is not an entity. Uh, it's merely a brand name. Uh, the corporate name, which Appellants Council knew because I told them and it was placed in the record many times was Universal Music Group Recordings, comma, inc. And they were never named as a party. They were never served. They were never sued. Um, as far as UMGI goes, they're a holding company. They're based in California, uh, is their principal place of business incorporated in Delaware, not subject to the personal jurisdiction, uh, of the district court in Florida. We provided a declaration. It was unrebutted. Uh, these are not new or novel issues as they relate to the Universal Music entities. Um, Appellants really didn't put much, if anything, into the record to oppose our arguments on service of process or lack of personal jurisdiction. And that was the basis for If they had properly served your client instead of Interscope, would your client have had sufficient contacts to be subject to jurisdiction in Florida? We would, well, these are two separate entities, and that really is a fundamental flaw in the, the entire approach. It's the argument that you just heard. It was the arguments in the appeal. It was the, the, the argument below. So to answer your specific, uh, question, Judge Grant, we would not have asserted a lack of personal jurisdiction on behalf of UMGR. The Interscope Music does business worldwide, uh, or at least within Florida. We wouldn't have raised that objection, but they were never named. They were never served. UMGI, we would have raised the exact same argument, lack of personal jurisdiction. Thank you. So since that's the basis for the, for the dismissal, I could address more. I think that it would be a bit of a monologue if the court has any questions, I'd be happy to answer them. Otherwise, I will yield the rest of my time to my co-appellee. All right. Thank you, Mr. Makao. We'll hear from Mr. Keller here. May it please the court, Zach Keller here on behalf of Applebee's, Jonathan Kirk, and Billion Dollar Baby Entertainment. Despite the allegations from appellant from the first day of this case and the filing of the complaint, this is exactly what the district court recognized it as in the order for summary judgment. This is a garden variety battery and breach of contract claim. This was found by the district court in their summary judgment order, and it was supported by the jury's eventual verdict of no finding a breach of contract as to the contract, and a hundred dollars for the battery on Mr. Anyudike to which summary judgment was granted for Mr. Anyudike as to liability, and the only issue remaining there was damages. Appellant has asserted seven enumerations of error, six of which apply to Mr. Kirk and Billion Dollar Baby Entertainment. We have in response in both our brief and subsequently filed a motion for frivolous appeal sanctions under Rule 38. These arguments are essentially inexorably intertwined because each of the enumerations of error from the appellant are completely devoid of basis in law or fact. So specifically, I just noted these were not properly preserved for this court to review. This was an order striking motion. Before you get there, let me ask you about your motion for sanctions. The district court stayed the motion at the district court level, and so I guess if you were asking for sanctions at this level, that would require fact finding, wouldn't it? And we don't engage in fact finding. That would have to happen at the district court level. It would not, your honor, because the motion for sanctions we have at the district court level is specific to a single claim in this, the civil conspiracy claim. The sanctions we're seeking here before the 11th circuit are for the frivolous appeal for all of the claims which are inclusive of that, but also for the baseless and frivolous claims for the discovery issues, for the summary judgment, the complete lack of any citations to the transcript or support for legal authority contained in appellant's brief. The district court would have to, for sanctions, the district court level, right? I don't think so. The motion was stayed at the district court level? Yes, the rule 11 motion, we had a hearing on that following the jury verdict, and then before an order was entered on that, it was stayed pending this appeal. Okay. But that rule 11 was just as to the frivolous issue on the complaint for the civil conspiracy. That doesn't address any of the other issues here and whether these were frivolous appeal issues, the discovery issues, the summary judgment issues, the issues related to objections which were sustained at trial. Our contention is that there's no legal or factual support or record support for any of the allegations as to those issues made by the appellant. So you're asking for sanctions here only on the basis of things that occurred during the appeal. Am I correct about that? Yes. Okay. Yes, exclusively for frivolous appeal sanctions for these being baseless and without support for the appeal. And so contained within the enumerations of errors, we have continued both issues that this court doesn't have jurisdiction to review such as the discovery issue and misrepresentations from appellants, which he has repeated in the lower court and here. I want to specifically address this issue about not being able to coordinate discovery because of the number of attorneys. At ECF 264, when he made this argument before Judge Becerra, the magistrate judge, she rejected this in kind and she said to conclude this argument has no basis would be an understatement. There's nothing in the record to indicate counsel ever tried to set a discovery hearing in this case. Indeed, had opposing counsel refused to provide dates for a plaintiff's counsel could have contact the undersigned's chambers. And of course, there's no evidence this ever happened by email or by phone. And so even though he's repeated this over and over again, the judge who would have heard this issue rejected it entirely that there's no record support for this at all. As to the motions that are asked to the issues he's raised regarding the extension of discovery and the introduction of this late what he's called newly discovered evidence. The district court was well within their discretion to deny on each of those grounds. The ability to control discovery is reviewed for an abuse of discretion by the district court. The district court made it clear in numerous orders that discovery would not be extended absent exigent circumstances. There were no such circumstances here. The only reason that appellant asked for extensions of discovery was due to his own lack of diligence in not pursuing discovery during the either the lower court when we were in state court prior to removal. We had an extended discovery period there. We then had almost 11 months of fact discovery in this case in front of the district court, which virtually none took place by the plaintiff and or by the appellant until the last minute until these final few days prior to the close of discovery. He then files three notices of unconventional filing seeking to admit this series of videos documents. I think it was over 160 pages of documents and 22 videos which existed during discovery but were not either located or properly certified or found by appellant until some number of months after summary judgment briefing had already been completed. And so the district court was well within its discretion to deny those. The argument that he tried to make today regarding 404 and the admission of what he's calling the Kim Coldheart and these other attacks completely unsupported by the record. He made no argument before the lower court that these would be admissible under 404. The district court in the summary judgment order properly found that it was within their discretion to not consider any of these because they were not provided in discovery and that they did not believe they were relevant or authentic. And again, he just continues to make these unsupported allegations about attacks that are not in the record, that there's no transcript support, there's no citation support for some kind of conspiracy, for some kind of marketing scheme or plan. These are just baseless allegations. There's no transcript citation, there's no record citation, there's no evidence of this which is why they were properly dismissed at summary judgment. The final two enumerations of error relate to issues that occurred at the trial court. One is about the admission of security camera video and the second is about the admission of an arrest warrant and affidavit of appellant Kenneth Carey that was admitted under 404B. So as to the first issue, the district court properly found that the video at the time appellant sought its admission had not been properly authenticated and the foundation had not been properly laid at that time. The court did not, as appellants characterize it, exclude this video or find that it was inadmissible. The court merely sustained the objection and found that it had not been properly authenticated at this time but left the door open for this for appellant at any point during the remainder of his case in chief to authenticate and introduce this video and he didn't do that at any point and so it was well within the district court's discretion to make that finding and to sustain that objection. Similarly, as to the 404B evidence, this was introduced by police at the close of their case after a witness, Mr. Soto, had already testified. His testimony detailed a situation where in this case that he believed the appellants were attempting to scam him by trying to use his money to fund their event. The 404B evidence, the court reviewed the affidavit in support of the arrest warrant and found that that was a virtually identical situation and that it was relevant for proper 404B purposes so there was no abuse of discretion there. So at this point, I would ask if the panel has any other questions. Otherwise, I would rest on my brief. All right. Thank you, Mr. Keller here. Mr. May, you've reserved some time for rebuttal. The Baby and Universal Music Group published specific lyrics that we wanted to admit in the lower court which were denied. The lyrics are, caught up in my feelings, I'll F around and kill another N-word. I've been having mood swings like a Gemini. I can use the murder for therapy. I can make the news with it, break the internet, and have them all nervous and scared of me and get squeaky clean, never seen a thing. And so here you have these published lyrics, published by UMG Interscope, that show the scheme. It shows a marketing scheme. It shows their identity, what they're trying to do. Additionally, with jurisdiction with Interscope, I submitted a case law, Copperwell Court. The coordinated, well, persons, oh, I'm sorry, this is Watwood v. Barber. Persons who hold themselves as a corporation do business as such and who commit a tort in the course of such business cannot set up a lack of legal incorporation to escape liability, therefore, in an action brought against them as a corporation. I'm out of time, Your Honors. I'd love to... I think we have your argument. Thank you, Mr. May. Court is in recess until 1 o'clock this afternoon.